Valentine R. **WINSEY**, Plaintiff,

v.

PACE COLLEGE and Jack S. Schiff, Individually and in his capacity as Agent for Pace College, Defendants.

No. 74 Civ. 2573.

United States District Court,
S. D. New York.

May 6, 1975.

Vladeck, Elias, Vladeck & Lewis, New York City, for plaintiff; Judith P. Vladeck, Deborah A. Watarz, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendants; Albert X. Bader, Jr., Martin H. Zuckerman, Harold S. Parsons-Lewis, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendants, Pace College ("Pace") and Jack S. Schiff ("Schiff"), move pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure for an order dismissing the complaint for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted or, in the alternative, granting summary judgment in favor of defendants. For the reasons set forth below, the motion is granted in part and denied in part.

### Facts

Plaintiff is Ms. Valentine R. Winsey ("Winsey"), a former Associate Professor at Pace. Defendants are Pace, a large city university, and Schiff, the Executive Vice President of Pace.

Winsey had been employed by Pace, first as a Lecturer and then as an Associate Professor from 1966–1970. In February of 1970, Pace placed Winsey on a one year terminal contract of employment to cover the 1970–71 academic year. On July 30, 1970, Winsey filed a complaint against Pace with the Commission on Human Rights of the City of New York ("City Commission") alleging that Pace had denied her a promotion and had terminated her employment based solely on her sex. The City Commission reached a decision on July 3, 1972, in which it found sex discrimination as alleged and consequently ordered, *inter alia,* the reinstatement of Winsey. This decision was brought on for review before the New York State Supreme Court. On November 13, 1972, the New York State Supreme Court set aside the order of the City Commission. This action was affirmed by the Appellate Division of the Supreme Court, First Department, on May 14, 1974. Leave to appeal to the New York State Court of Appeals was denied on July 2, 1974.

In the interim, while the above-mentioned appeals were pending, Pace advertised for teachers qualified in psychiatry and biology to teach a course entitled "Human Sexuality" (December of 1972). Winsey applied for this position on December 19, 1972, but failed to get the job. Winsey thereafter filed a com-

plaint with the Equal Employment Opportunity Commission ("EEOC"). That complaint alleged that Pace's refusal of employment in the latter instance was an act of retaliation against her for the previous action which she had initiated against Pace. On March 14, 1974, Winsey received a "Notice of Right to Sue" from the EEOC. The instant action followed, charging Pace with a violation of 42 U.S.C. § 2000e–3(a) and charging Schiff with a tortious interference with Winsey's right to seek and secure employment.

### Jurisdiction

Winsey, in her complaint, states that jurisdiction is premised upon 42 U.S.C. § 2000e–3(a), 42 U.S.C. § 2000e–5(f)(1) and (3), and 42 U.S.C. § 1983. Additionally, Winsey seeks to assert jurisdiction over the individual tort claim via the pendent jurisdiction of this Court.

Jurisdiction is validly invoked pursuant to 42 U.S.C. § 2000e–5(f)(3) which reads in pertinent part:

"(3) Each United States district court . . . shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . ."

The assertions of jurisdiction under 42 U.S.C. § 2000e–3(a) and 42 U.S.C. § 2000e–5(f)(1) are irrelevant.

42 U.S.C. § 1983 does not in itself confer jurisdiction on the district court to hear cases arising under the Civil Rights Statutes. It is the substantive provision, and its jurisdictional counterpart is 28 U.S.C. § 1343(3). The complaint simply makes the bare assertion that "[j]urisdiction also lies under 42 USC § 1983." (Complaint ¶ 1). The only fact which the Court can find in the complaint which could conceivably

support this assertion is the statement that Pace "is an educational institution duly organized under the laws of the State of New York." (Complaint ¶ 6). This statement appears to be patently insufficient in the face of the command of Rule 8(a)(1) of the Federal Rules of Civil Procedure which calls for "a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ." However,

"[w]here a litigant raises claims under the Civil Rights Statutes, even though a complaint appears to be insubstantial, the more judicious approach is to assume jurisdiction and then decide whether the pleading states a claim for relief." Stambler v. Dillon, 302 F.Supp. 1250, 1252 (S.D. N.Y.1969).

This approach will be employed here.

### The 42 U.S.C. § 1983 Claim

42 U.S.C. § 1983 provides a remedy where a person suffers a deprivation of "any rights, privileges, or immunities secured by the Constitution and laws". The act complained of, however, must be one done "under color of any statute, ordinance, regulation, custom, or usage, of any State".

Defendants assert that the acts complained of were private acts, and that the intrusion of the state, if any, was so minimal that it would fail to elevate essentially private acts to the level where they would be deemed acts of the state.

[1] Winsey claims that Pace did act under color of state law in denying employment to her in that "the College receives substantial monies from governmental entities". (Watarz Affid. ¶ 4).[1] However, since information concerning the receipt of governmental funds is in the sole possession of Pace, she requests relief under Rule 56(f) of the Federal Rules of Civil Procedure, to deny sum-

1. The affidavit of W. Merritt Jones, Financial Vice President of Pace, states that Pace received $825,920 from the State of New York during the fiscal year ended August 31, 1973, out of total revenues of $18,828,296. In addition, Pace also accrued receivables from the state in the amount of $67,419 during the fiscal year.

mary judgment and to allow leave to prepare additional affidavits and to take depositions to establish state action.

The assertion by Winsey

"overlooks the essential point—that the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint." Powe v. Miles, 407 F.2d 73, 81 (2d Cir. 1968).

Thus, if the Court were to grant relief under Rule 56(f) and it were to be established that Pace did in fact receive substantial monies from the State, this would still not suffice to show the requisite state action. The amount of funding received is simply immaterial unless it can be shown to have caused the alleged injury, to wit, the retaliation.

Since the Court has looked beyond the fact of the pleadings in reaching its conclusion, this motion to dismiss for failure to state a claim will be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12. Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part that summary judgment "shall be rendered forthwith if the pleadings . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally* Empire Electronics Co. v. United States, 311 F.2d 175 (2d Cir. 1962). The moving party has the bur-

den of showing both the absence of any genuine issue of material fact and that movant is entitled to judgment as a matter of law. Dean Construction Co. v. Simonetta Concrete Const. Corp., 37 F.R. D. 242 (S.D.N.Y.1965).

Since the amount of funding, even if established, has not been shown (nor have the barest allegations been made) to be the cause of the alleged injury, it is not material. Therefore, Pace has carried its burden of showing the absence of any issue of *material* fact and that it is entitled to summary judgment. A claim under 42 U.S.C. § 1983 must fail, as a matter of law, since state action cannot be proven.[2] Defendants' motion for summary judgment as to this claim must be granted.

### *The 12(b)(1) Claim*

■ Defendants next allege pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure that this Court lacks jurisdiction since plaintiff has not completed the proper deferral of her charge to the appropriate state or local agency as required by Section 706(c) of the Equal Employment Opportunity Act ("the Act"), 42 U.S.C. § 2000e–5(c).[3] Plaintiff contends that there was a valid deferral.

Jurisdictionally, there are several prerequisites to the commencement of a Title VII action in this Court. If the alleged violation occurs in a state or locality which is empowered to investigate the charge and grant relief, then relief, in the first instance, must be sought at the state or local level. 42 U.S.C. §

2. *See generally* Wahba v. New York University, 492 F.2d 96 (2d Cir.), cert. denied, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); Grafton v. Brooklyn Law School, 478 F.2d 1137 (2d Cir. 1973); Powe v. Miles, 407 F.2d 73 (2d Cir. 1968).

3. 42 U.S.C. § 2000e–5(c) provides in pertinent part:
"(c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the

unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated . . . ."

2000e–5(c). Once the state or local proceedings have been terminated or after the expiration of sixty days since the commencement of the state or local proceedings, the complaint may be brought on before the EEOC. 42 U.S.C. § 2000e–5(c). Upon a finding by the EEOC that there is "reasonable cause to believe that the charge is true", 42 U.S. C. § 2000e–5(b), the EEOC issues to the complainant a "Notice of Right to Sue". 42 U.S.C. § 2000e–5(f)(1). At this stage the exhaustion of administrative remedies is deemed to be complete and resort to the federal court is proper. *See* Griffin v. Pacific Maritime Association, 478 F.2d 1118, 1120 (9th Cir.), cert. denied, 414 U.S. 859, 49 S.Ct. 69, 38 L.Ed.2d 109 (1973); Rouse v. Gulf Oil Corporation, 350 F.Supp. 178, 179 (E.D.Pa.1972).

The facts relating to the alleged deferral or the lack thereof are not in dispute. Winsey filed her complaint directly with the EEOC on March 14, 1973. She did not seek prior relief from any state or local agency although both the City Commission and the New York State Human Rights Commission are empowered to investigate and to provide relief where retaliation is alleged. *See, e. g.*, N.Y. Executive Law §§ 296, 297 (McKinney's Consol.Laws, c. 18, 1972). The EEOC, however, did notify the City Commission of the charge, by memorandum dated April 2, 1973.[4] The City Commission acknowledged receipt of the complaint from the EEOC in a letter dated April 4, 1973.[5] No determination had been made by the City Commission during the sixty days following the filing of the retaliation complaint with them, and on March 14, 1974, the EEOC notified Winsey of her right to sue.

The issue here, quite simply, is whether the procedure employed in the instant case was sufficiently in compliance with the dictates of the Act to defeat a motion to dismiss under Rule 12(b)(1). The Court finds that it was sufficient.

In reaching its conclusion, the Court is mindful of both the direction of Rule 8(f) regarding the liberal construction of pleadings and the underlying spirit of the Act which has been "continuously given a wide scope . . . in order to remedy, as much as possible, the plight of persons who have suffered from discrimination in employment opportunities." Rowe v. General Motors Corporation, 457 F.2d 348, 354 (5th Cir. 1972).

As defendants point out in their memorandum of law, the end sought to be achieved by Congress in enacting the deferral provision was reflected in the basic concern for the right of the states to resolve these conflicts in the first instance. (Defendants' Memorandum, pp. 13–14). The legislative history of the Act lends weight to this view.

> "[W]ith respect to the enforcement of the title, we undertook to keep primary, exclusive jurisdiction in the hands of the State Commissions for a sufficient period of time to let them work out their own problems at the local level." 110 Cong.Rec. 13087 (1964).

*See also* Abshire v. Chicago and Eastern Illinois Railroad Co., 352 F.Supp. 601, 604 (N.D.Ill.1972).

In testing compliance with the deferral provision, the cases are insightful. For example, in Eleuterio v. Conley, 58 CCH Lab.Cas. ¶ 9138 (S.D.N.Y.1968), plaintiff merely made oral representations to the court that he had contacted various state agencies and that they had been unable to render assistance. This was held to be an insufficient deferral.

A sufficient deferral was found in the case of Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). There petitioner had complained to the Colorado Civil Rights Commission of racial discrimination in employment. Those proceedings were terminated "without reaching a resolution of the controversy satisfactory to the petitioner." *Id.* at 523, 92 S.Ct. at 617. Sever-

---

4. Affidavit of Deborah A. Watarz, Exhibit A.

5. Affidavit of Deborah A. Watarz, Exhibit B.

al months later petitioner filed a charge with the EEOC. The EEOC then orally notified the Colorado Civil Rights Commission, but was informed that the Colorado Commission "waived" further action on the complaint. Upon a finding of probable cause by the EEOC the petitioner was allowed to institute suit in the federal court. On these facts, the United States Supreme Court found a sufficient deferral:

> "Nothing in the Act suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by the complainant himself, nor is there any requirement that the complaint to the state agency be made in writing rather than by oral referral." *Id.* at 525, 92 S.Ct. at 618.

In commenting on the specific procedure employed, the Court stated:

> "We see no reason why further action by the aggrieved party should be required. The procedure complies with the purpose . . . of § 706(b), to give state agencies a prior opportunity to consider discrimination complaints . . . ." *Id.* at 526, 92 S.Ct. at 618.

In the instant case, the City Commission had notice in writing from the EEOC of the charge and they acknowledged in writing receipt of the complaint. The City Commission had the opportunity to act in the first instance since the EEOC charge was held in abeyance pending a resolution by the City Commission. The City Commission neglected to act and the EEOC automatically reactivated the complaint, found reasonable cause, and notified Winsey of her right to sue. This procedure was sufficient and no further action by Win-

sey is required. Love v. Pullman Co., *supra*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed. 2d 679. *See also* Leisner v. New York Telephone Company, 358 F.Supp. 359, 362 n. 1 (S.D.N.Y.1973).[6]

Additionally, it should be noted that there is a line of cases which holds that even where deferral is clearly lacking the district court should not dismiss. In this instance the court should retain jurisdiction while the employee brings the claim before the state agency. *See* Oubichon v. North American Rockwell Corporation, 482 F.2d 569, 571 (9th Cir. 1973); Parker v. General Telephone Company of the Northwest, Inc., 476 F. 2d 595, 596 (9th Cir. 1973); Mitchell v. Mid-Continent Spring Company of Kentucky, 466 F.2d 24, 26–27 (6th Cir. 1972), cert. denied, 410 U.S. 928, 93 S. Ct. 1363, 35 L.Ed.2d 589 (1973); Motorola, Inc. v. Equal Employment Opportunity Commission, 460 F.2d 1245, 1246 (9th Cir. 1972).

Defendants' motion to dismiss is denied.

### *The 12(b)(6) Claim*

■ Defendants next contend that even if jurisdiction is present, plaintiff has failed to state a claim upon which relief can be granted and that the complaint must therefore be dismissed. This contention is based upon defendants' reading of Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), which reads in pertinent part:

> "(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or

---

**6.** Wherein it was stated:

"Defendant had moved to dismiss the complaint on the grounds that: 1) plaintiffs had not properly filed their charges with the New York State Division of Human Rights as required by 42 U.S.C. § 2000e–5(b)

. . . . .

"As for the first ground, this court ruled that since the state agency had been in-

formed by the EEOC of the plaintiffs' charges, proceedings were commenced in the state agency within the meaning of Section 2000e–5(b). *See* Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)." Leisner v. New York Telephone Company, 358 F.Supp. 359, 362 n. 1 (S.D. N.Y.1973).

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

The statute proscribes retaliation in two instances: (1) where the employee has "opposed any practice made an unlawful employment practice by this subchapter" and (2) where the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Plaintiff seeks to premise her retaliation charge on her opposition to practices made unlawful employment practices by this subchapter, to wit, discrimination in employment and promotion based on sex.

Defendants point out that the alleged acts of discrimination which Winsey opposed occurred in 1970 and 1971. Congress had seen fit during this period of time to specifically exempt from the operation of Title VII educational institutions with respect to the employment of individuals performing educational functions.[7] Since institutions such as Pace had no obligations under Title VII with respect to employees such as Winsey who were employed to perform educational functions, Pace was incapable of committing an unlawful employment practice under Title VII. Defendants conclude that Winsey cannot now argue that the charge of retaliation is based on her opposition to an unlawful employment practice under this subchapter since Pace was incapable of committing the alleged unlawful employment practice.

Winsey's basic allegation is that her opposition to Pace's allegedly discrimi-

natory behavior began in 1970 and continued for many years. During the interim Congress saw fit to amend Section 702 to include the previously exempted educational institutions within the coverage of Title VII.[8] This amendment became effective on March 24, 1972. Winsey points out that her original complaint was still before the City Commission on March 24, 1972 and further that the City Commission did not render its decision until July 3, 1972. Moreover, the appeal from that decision continued for approximately two years. Thus, she concludes that her opposition was active long after the conduct in question had been made an unlawful employment practice under Title VII.

The fallacy of plaintiff's argument and her basic misunderstanding of the intention of the statute is amply illustrated by a paragraph in her memorandum wherein it is stated:

> "In any event, even if the Court should find that, as the defendants suggest, the *unlawful employment practices* underlying the retaliation charge must have taken place after March 26, 1972 [sic], there is sufficient *opposition* occurring after that date to support the charge of retaliation." (Plaintiff's Memorandum at 14) (emphasis added).

The confusion surrounds the question of whether the effective date of the "unlawful employment practices" or the effective date of the "opposition" is critical.

Plaintiff would attempt to convince the Court that the timing of the opposition is crucial and that the opposition, beginning prior to March 24, 1972 and

---

7. Prior to 1972, Section 702 read in pertinent part:
   "This title shall not apply to . . . an educational institution with respect to the employment of individuals to perform work connected with the educational activities of such institution."
   Congress did not merely omit educational institutions from the coverage of the Act; rather, it specifically exempted them.

8. Section 702, as amended, now states:
   "This subchapter shall not apply to an employer with respect to the employment of aliens outside of any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities."

continuing thereafter, is sufficient to support a retaliation charge. This reasoning, while attractive at first blush, would give rise to certain anomalous results on varying the underlying facts. For example: Assume both A and B, college professors at Pace, have identical employment discrimination complaints as of January 1, 1972. Since educational institutions were exempt from Title VII coverage on that date both A and B pursue their remedies on the local level. A prosecutes her claim unsuccessfully and the proceeding terminates on March 1, 1972. B prosecutes her claim, also unsuccessfully, and the proceeding terminates on June 1, 1972. Both later apply for reemployment at Pace in 1974, fail to secure the sought-after employment, and file second complaints against Pace alleging that the denial of employment in the second instance was an act of retaliation for their previous actions in 1972. Under Winsey's theory, B would have a valid retaliation claim while A would have none. The sole distinguishing factor would be merely the length of the opposition. The length of opposition relates in no way to the validity of the complaint. It may depend on such unrelated factors as the congestion of the court's docket. If anything, this reasoning would benefit the less diligent advocate whose opposition drags on for years in spite of the merits of the claim.

The many cases cited by plaintiff amply illustrate the broad interpretation given to the term "opposed". Opposition in the cases took a wide variety of forms, not necessarily limited to the filing of a Title VII complaint or to participation in a proceeding before the EEOC. In each case, however, the opposition, in whatever form it took, was to a practice "made an unlawful employment practice by this subchapter". No case has been cited to the Court which adopts the theory offered by the plaintiff. Similarly, the legislative history of Title VII [9] and the 1972 amendments [10] lend no support to plaintiff's argument.

Indeed, it is interesting to note that when Congress enacted Title VII in 1964, including Section 704 which dealt with retaliation, they made no mention of the retaliation provision's covering or relating back to previous complaints filed on the state level. It would appear that they envisioned a time lag before retaliation suits were to be instituted under Title VII. This is so because, before a retaliation complaint could be instituted, there would first have to be an attempt to exercise rights delineated under Title VII which would then form the basis for the retaliation charge. The legislative history is silent on this point. *See* footnote 9, *supra*. To infer that Congress intended otherwise in 1964 would be to take an undue liberty in imputing to their actions an intention to grant rights retroactively.

Similarly, faced with a parallel situation when the 1972 amendments were enacted, Congress was again silent on the subject. *See* footnote 10, *supra*. Once again if we are to draw any inference, the more reasonable conclusion is that Congress meant what its words said (that opposition must be to a practice *made an unlawful employment practice by this subchapter*) rather than that they intended what would be, in effect, a retroactive grant of rights.

The Court must therefore conclude that the operative phrase in the statute is "unlawful employment practices" rather than the term "opposition". The practice which a plaintiff opposes must be, when engaged in, unlawful under Title VII in order to support a later charge of retaliation.

This motion to dismiss or, in the alternative, for summary judgment will be treated as a motion for summary judgment since the Court has looked to materials beyond the pleadings. Fed.R.Civ.P.

9. U.S.Code Cong. & Admin.News, 1964, p. 2355.

10. U.S.Code Cong. & Admin.News, 1972, p. 2137.

12. Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part that summary judgment "shall be rendered forthwith if the pleadings . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally* Empire Electronics Co. v. United States, *supra*, 311 F.2d 175. The moving party has the burden of showing both the absence of any genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Dean Construction Co. v. Simonetta Concrete Const. Corp., *supra*, 37 F.R.D. 242.

The Court must conclude that defendants have carried their burden of showing the absence of any issue of material fact and that, based on the conclusions of the Court on the applicable law, they are entitled to judgment as a matter of law. Therefore, defendants' motion for summary judgment as to this claim must be granted.

### The Pendent Claims

The subject of pendent jurisdiction was addressed in the case of United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The United States Supreme Court therein noted that the exercise of pendent jurisdiction is a matter of discretion. *Id.* at 726, 86 S.Ct. 1130, at 1139. The Court went on to state that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

The dismissal of the federal claims in this case dictates the dismissal of the state claims.

Accordingly, defendants' motion for summary judgment as to the claim asserted under 42 U.S.C. § 1983 is granted, dismissing the complaint as to that claim. Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied. Defendants' motion for summary judgment as to the claim asserted under 42 U.S.C. § 2000e–3(a) is also granted, dismissing the complaint as to that claim. Finally, the claims against the defendant Schiff pursuant to the pendent jurisdiction of this Court are dismissed.

So ordered.