Elen BAHR, Respondent,

v.

CAPELLA UNIVERSITY, Appellant.

No. A08–1367.

Supreme Court of Minnesota.

Sept. 9, 2010.

Joni M. Thome, Frances E. Baillon, Halunen & Associates, Minneapolis, MN, for respondent.

Thomas A. Harder, Foley & Mansfield, P.L.L.P., Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, MN, for amicus curiae Commissioner of Minnesota Department of Human Rights.

## OPINION

ANDERSON, G. BARRY, Justice.

This case arises from appellant Capella University's employment termination of respondent Elen Bahr. Bahr brought an action in district court claiming that her employment termination was in retaliation for opposing discriminatory practices and that such retaliation violated the Minnesota Human Rights Act (MHRA), Minn.Stat. §§ 363A.01–.41 (2008). Capella moved to dismiss Bahr's suit for failure to state a claim upon which relief can be granted, Minn. R. Civ. P. 12.02(e). Capella argued that Bahr failed to establish that Capella's conduct was forbidden by the MHRA, and the district court granted Capella's motion. The court of appeals reversed, holding that Bahr need only allege facts showing a good-faith, reasonable belief that the conduct opposed was discriminatory, and that Bahr's complaint set forth a legally sufficient claim. *Bahr v. Capella Univ.*, 765 N.W.2d 428, 436, 439 (Minn.App.2009). Because we conclude that Bahr's belief that Capella was engaging in discriminatory conduct in violation of the MHRA was unreasonable as a matter of law, we reverse.

Bahr, a white woman, began working in Capella's communications department in February 2006, and assumed management of L.A., an African–American woman, in June 2006.[1] By September 2006 Bahr noticed that L.A. was failing to meet performance expectations. Bahr provided informal coaching to assist L.A., but L.A. did not improve.

In January 2007 Bahr asked Capella's Human Resources Department for assistance in improving L.A.'s performance. After Bahr discussed L.A.'s work performance with Human Resources, Bahr met with L.A. in February 2007 to discuss performance issues, and Bahr noted several specific areas of concern. After the meeting, Bahr told Human Resources that L.A.'s performance was adversely affecting the communications team. On March 6, 2007, Bahr again met with L.A., established time and work management processes for L.A., and shifted some of L.A.'s duties to another employee. The two also set up weekly meetings to review L.A.'s progress. On March 7, 2007, Bahr met with her supervisor, Brad Frank, as well as Seth Lockner and Nichole Scott, two Human Resources employees, and reported that Bahr believed L.A. should be placed on a performance improvement plan (PIP). Lockner "demanded" that Bahr "move slowly with [L.A.]" and "insisted that [Bahr] could NOT move forward with any formal PIP." Bahr alleges that Capella's resistance was "highly unusual" because she had previously placed two other employees on a PIP.[2] Bahr met with L.A. again on March 27, 2007, to discuss her deficient work performance.

During March and April 2007 Bahr continued to work with L.A. and to report to Scott the negative effect L.A.'s performance was having on Bahr's department. In response, Scott told Bahr to "move more slowly on the matter [with L.A.] than she had ever moved on a performance issue." Scott also told Bahr that L.A. "ha[d] a history" in the organization that was "racially based" and warned that action could result in a discrimination lawsuit

---

1. Because this case is an appeal from dismissal under Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted, the facts are only those alleged in the complaint. *See Radke v. County of Freeborn*, 694 N.W.2d 788, 791 n. 1 (Minn.2005).

2. Bahr's complaint indicates that a PIP had been helpful for one employee under Bahr's supervision, while the other employee ultimately resigned after being placed on a PIP.

by L.A. Scott added that L.A.'s "situation was known and monitored by the highest levels in [Capella]."

During this time, Bahr completed annual performance evaluations, meeting with all of her team members except L.A. Scott instructed Bahr to send L.A.'s review to Scott and the legal department before sharing it with L.A. When L.A. rated poorly, Scott told Bahr to "minimize the performance issues raised" and to "do the right thing" and provide "balance" to L.A.'s review. Scott added that she and Lockner would review the evaluation and have the legal department review it. Human Resources did not evaluate a performance review of any other employees.

On April 11, 2007, Bahr met with L.A. to discuss the performance review. After the meeting, Bahr told Scott that she wanted to place L.A. on a PIP. Bahr also told Scott that the university's treatment was "unfair and discriminatory to [L.A.] and to other employees" because no other employee was receiving the same treatment. On April 16, 2007, Bahr restated to Scott and Frank that she believed Capella's conduct discriminated against L.A. and other employees.

On April 17, 2007, Frank told Bahr that employees Bahr managed complained about Bahr to Human Resources. Frank did not believe the complaints and complimented Bahr on her performance. Bahr had requested a 360–review[3] of her department in December 2006 to address any concerns, but Frank denied the request. After Bahr complained about allegedly unfair discriminatory treatment of L.A. and others in March and April 2007, Capella ordered the 360–review, to be followed by a development plan for Bahr, not L.A.

Bahr told Frank on April 19 that she could no longer participate in the treatment of L.A. that Bahr perceived as discriminatory. On June 12, 2007, Frank asked Bahr how L.A. was performing. Bahr responded that L.A. was not doing her job. Bahr reminded Frank that her "hands were tied by the directives of HR" and that Bahr was "unwilling to engage in discriminatory treatment."

That same day, Bahr met with an outside consultant to discuss the 360–review results. The results showed high rankings from Bahr's director and peers but lower scores from staff. Bahr also met with another outside consultant to discuss how to improve her work team's dynamic. Bahr alleges managers in similar situations were given opportunities to work on team dynamic issues.

On June 19, 2007, Bahr told Frank that she had taken steps to improve her department's dynamics. Frank told Bahr that he did not think Bahr could "turn the situation around to suit him" and listed various options for terminating Bahr's employment. Bahr claims she had no reason to believe her employment was in jeopardy. On June 20, 2007, Bahr told Frank she would not resign. Frank terminated Bahr's employment and told Bahr to go home.

Bahr brought an action in district court, alleging that Capella engaged in reprisal under the MHRA by terminating Bahr's employment for refusing to participate in employment practices forbidden under the MHRA and for good-faith reports of discriminatory treatment. Capella brought a motion to dismiss under Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted. The district

---

**3.** A 360–review involves having every member of a department review every other member of a department.

court noted that the only contested issue was whether Bahr had pleaded that the conduct that led to her employment termination was statutorily protected. As part of its analysis, the court looked at whether the practices Bahr opposed were discriminatory and in violation of the MHRA.[4] The court concluded that Capella's treatment of L.A., and specifically, the decision to not place L.A. on a PIP, did not constitute an adverse employment action, and therefore was not forbidden by the MHRA. Because the district court did not view the practices Bahr opposed as forbidden by the MHRA, the court granted Capella's motion to dismiss. The court, however, did not reach the issue of whether Bahr merely had to plead a good-faith, reasonable belief that Capella discriminated against L.A. because the court viewed Bahr's assertion that Capella discriminated against L.A. as unreasonable as a matter of law. Bahr appealed, and the court of appeals reversed. *Bahr*, 765 N.W.2d at 439.

The court of appeals concluded that Bahr only had to plead a good-faith, reasonable belief that Capella's actions, which Bahr opposed, were violations of the MHRA. *Id.* at 436. Applying this standard, the court of appeals noted that on four occasions, Bahr complained to Human Resources that Bahr believed that Capella's refusal to implement a PIP for L.A. to help her improve her job performance was discriminatory. *Id.* at 437. In addition, Capella's Human Resources Department had previously allowed Bahr to initiate PIPs with other employees, and Human Resources had commented that L.A. had a "racially-based history" with Capella, and Capella expressed concern about L.A. initiating a race discrimination lawsuit if Ca-

pella placed L.A. on a PIP. *See id.* The court of appeals concluded that Bahr's "complaint sets forth objectively reasonable grounds upon which to base [Bahr's] subjective belief that [Capella] was treating L.A. differently on the basis of race in violation of the MHRA." *Id.*

Because this case comes to us on appeal from the district court's decision to dismiss Bahr's complaint pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted, we review the legal sufficiency of the claim de novo. *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn.2008). A pleading must "contain a short plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought." Minn. R. Civ. P. 8.01. When conducting our review, we "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Hebert*, 744 N.W.2d at 229 (citation omitted) (internal quotation marks omitted).

We have said that "a pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *N. States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963). But a legal conclusion in the complaint is not binding on us. *Hebert*, 744 N.W.2d at 235. A plaintiff must provide more than labels and conclusions. *See id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The MHRA reprisal provision states:

---

4. The district court noted that Bahr's complaint is unclear about whether Capella's actions discriminated in favor of L.A., against L.A., in favor of non-minority employees, or against non-minority employees. As a result, for purposes of the motion, the court assumed that Bahr meant to assert that Capella was discriminating against L.A.

It is an unfair discriminatory practice for any individual who participated in the alleged discrimination as a[n] ... employer ... to intentionally engage in any reprisal against any person because that person:

(1) *opposed a practice forbidden under this chapter*....

A *reprisal* includes, but is not limited to, any form of intimidation, *retaliation,* or harassment. It is a reprisal for an employer to do any of the following with respect to an individual because that individual has engaged in the activities listed in clause (1) or (2): refuse to hire the individual; depart from any customary employment practice; transfer or assign the individual to a lesser position in terms of wages, hours, job classification, job security, or other employment status; or inform another employer that the individual has engaged in the activities listed in clause (1) or (2).

Minn.Stat. § 363A.15 (emphasis added). Bahr alleges that Capella engaged in reprisal under the MHRA in the form of retaliation.

■ Under the MHRA, to establish a prima facie case for a reprisal claim, a plaintiff, such as Bahr, must establish the following elements: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Hoover v. Norwest Private Mortgage Banking,* 632 N.W.2d 534, 548 (Minn. 2001) (citation omitted) (internal quotation marks omitted). Capella contests only the

first element. Accordingly, the question is whether Bahr pleaded opposition to practices that are "forbidden" under the MHRA, thereby making her conduct "statutorily-protected."

■ Capella argues that the plain meaning of the phrase "practice forbidden under this chapter" in Minn.Stat. § 363A.15 requires that the practice opposed must be *actually* forbidden under the MHRA. In contrast, Bahr argues that she need not establish and plead opposition to practices that are actually unlawful under the MHRA. Instead, Bahr contends that she must only plead a good-faith, reasonable belief that Capella engaged in practices forbidden by the MHRA and that Bahr opposed those practices. In short, Bahr invites us to read a good-faith, reasonable-belief standard into Minn.Stat. § 363A.15. Bahr argues, in part, that federal courts that have analyzed the retaliation provision in Title VII of the Civil Rights Act[5] have applied a good-faith, reasonable-belief standard, and so should we when analyzing a reprisal claim under the MHRA.[6] The district court did not decide this issue because the court viewed Bahr's underlying assertion that Capella discriminated against L.A. as "clearly unreasonable as a matter of law." But the court of appeals agreed with Bahr and held that for a reprisal claim under the MHRA, a plaintiff need only allege "facts supporting a good-faith, reasonable belief that the conduct opposed constituted a violation of the MHRA." *Bahr,* 765 N.W.2d at 436.

---

**5.** The retaliation provision in 42 U.S.C. § 2000e–3(a) (2006) states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**6.** The Minnesota Department of Human Rights (MDHR), in its amicus brief, supports Bahr's position that the plain language of the MHRA reprisal provision states a good-faith, reasonable-belief standard.

In this case, we need not, and do not, decide whether a plaintiff must plead opposition to a practice that is actually forbidden under the MHRA in order to survive a Rule 12.02(e) motion, or must merely plead a good-faith, reasonable belief that the opposed practice was forbidden under the MHRA, because even under the more favorable good-faith, reasonable-belief standard, Bahr's complaint fails. Bahr alleges that she opposed "discriminatory employment practices." But Bahr's complaint is less than clear about what actions were allegedly discriminatory. The complaint indicates that there was ongoing communication between Bahr and Capella concerning L.A.'s performance issues. Bahr wanted to put L.A. on a formal PIP; Human Resources disagreed, instructed Bahr not to implement a formal PIP, and indicated that L.A. had a "history" at Capella that was racially based and Capella was concerned that L.A. might file a discrimination lawsuit. The complaint states that Bahr told employees in Human Resources on four occasions that she believed Capella's treatment of L.A. was unfair and discriminatory to L.A. and to other employees. On two occasions, Bahr stated that she was unwilling to engage in what she believed to be discriminatory treatment. Although the complaint makes vague references that Capella somehow discriminated against employees other than L.A., the underlying actions were only with respect to L.A. Bahr appears to allege that Capella discriminated against L.A. because Bahr was not allowed to put L.A. on a formal PIP and L.A.'s performance issues were handled differently because of L.A.'s race.

When analyzing the complaint to determine whether Bahr had a good-faith, reasonable belief that the practices she was opposing were discriminatory, we note that there is both a subjective and objective element to a good-faith, reasonable-belief standard. Capella is not contesting that Bahr's opposition was in good faith; this dispute does not concern the subjective element. Instead, the only issue is whether Bahr's belief was reasonable that what she was opposing was discriminatory and prohibited by the MHRA. Accordingly, the issue here concerns the objective component—was Bahr's opposition based on a legal theory and facts that are plausible? Bahr cannot merely claim a reasonable belief that the practices she opposed were forbidden by the MHRA and thereby avoid scrutiny of her claim. *See Barnes v. Benham Group, Inc.*, 22 F.Supp.2d 1013, 1022 (D.Minn.1998).

The court of appeals held that the complaint contained objectively reasonable grounds for Bahr to believe that Capella "was treating L.A. differently on the basis of race in violation of the MHRA." *Bahr*, 765 N.W.2d at 437. But treating an employee differently is not the threshold question; the threshold question is whether it is reasonable to believe that Capella's treatment of L.A. was forbidden by the MHRA. Under a good-faith, reasonable-belief standard, Capella's actions need not have been actual violations of the MHRA in order for Bahr's reprisal claim to survive the Rule 12 motion to dismiss. But Bahr must plead sufficient facts to show that it was objectively reasonable for her to believe that Capella's actions were forbidden by the MHRA.

 The MHRA specifies that it is an unfair employment practice for an employer, because of race, to "discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn.Stat. § 363A.08, subd. 2(3). The definition of "discriminate" in

the MHRA includes segregation or separation. Minn.Stat. § 363A.03, subd. 13. A cursory reading of the MHRA indicates that in order for there to be racial discrimination that constitutes an unlawful employment practice, there must be some adverse employment action. *See* Minn. Stat. § 363A.08, subd. 2(3); *cf. Ledergerber v. Stangler,* 122 F.3d 1142, 1144 (8th Cir.1997) (stating that under Title VII, a claim for discrimination must relate to an adverse employment action that materially affected the terms or conditions of employment); *Smith v. DataCard Corp.,* 9 F.Supp.2d 1067, 1079 (D.Minn.1998). An adverse employment action must include some tangible change in duties or working conditions. *Burchett v. Target Corp.,* 340 F.3d 510, 518 (8th Cir.2003). There must be some material employment disadvantage; minor changes in working conditions are insufficient. *Brannum v. Mo. Dep't of Corr.,* 518 F.3d 542, 549 (8th Cir.2008); *Jones v. Fitzgerald,* 285 F.3d 705, 714 (8th Cir.2002) (stating that the Eighth Circuit has "consistently held a change in non-tangible working conditions, no matter how unpleasant, fails to constitute a 'material employment disadvantage' necessary to establish an adverse employment action"). "Not everything that makes an employee unhappy is an actionable adverse employment action." *LaCroix v. Sears, Roebuck, & Co.,* 240 F.3d 688, 691 (8th Cir.2001).

Although no Minnesota decision has directly addressed the issue raised in this dispute, we have said that "[i]n construing the MHRA, we apply law developed in federal cases arising under Title VII of the 1964 Civil Rights Act." *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn. 1999); *see also Goins v. W. Group,* 635 N.W.2d 717, 724 n. 3 (Minn.2001); *Dietrich v. Canadian Pac. Ltd.,* 536 N.W.2d 319, 323 n. 3 (Minn.1995). When determining whether a party has a reasonable belief,

federal courts in Title VII cases appear to use two different tests: (1) whether a reasonable fact-finder could believe that the conduct complained of was unlawfully discriminatory, *see, e.g., Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 322 (3d Cir.2008) ("[I]f no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected."); or (2) whether the party's belief is unreasonable in light of applicable substantive law, *see, e.g., Butler v. Ala. Dep't of Transp.,* 536 F.3d 1209, 1214 (11th Cir.2008) (stating that a party's belief is unreasonable if "binding precedent squarely holds that [the] particular conduct is not an unlawful employment practice," and "no decision of [the presiding court] or of the Supreme Court has called that precedent into question or undermined its reasoning").

The U.S. Supreme Court in *Clark County School District v. Breeden* assumed without deciding that a good-faith, reasonable-belief standard applied when analyzing a sexual discrimination claim under Title VII. 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). When conducting its analysis, the Court applied a hybrid test by stating that "no one could reasonably believe that the incident [at issue] violated Title VII." *Id.* That is, the Court outlined what sexual discrimination was under Title VII, cited its own cases to illustrate what was actionable sexual harassment, and went on to state that "[n]o reasonable person could have believed that the single incident [at issue] violated Title VII's standard." *Id.* at 270–71, 121 S.Ct. 1508.

■ Without adopting one of these tests, however described, it is fair to say that the reasonableness of a party's belief must be connected to the substantive law.

Although under a good-faith, reasonable-belief standard a party does not have to allege an actual violation of the MHRA for a reprisal claim, for there to be statutorily protected conduct a party does have to allege that the party had a good-faith, reasonable belief that the opposed practices were prohibited by the MHRA. If a practice is not unlawful under the plain terms of the MHRA, a party's belief that the practice is unlawful cannot be reasonable. Bahr's position that the basis for reasonable belief need not be tied to substantive law, in some way, would allow a plaintiff to rely entirely on the plaintiff's own reasoning and sense of what is discriminatory. A basis as subjective as this would defeat any attempt to analyze whether a plaintiff had a reasonable belief.

 We conclude that no reasonable person could believe that Capella's treatment of L.A. was forbidden by the MHRA because L.A. was not subjected to any-thing that could remotely be considered an adverse employment action. Capella instructed Bahr not to move forward with a formal PIP for L.A. and to minimize performance issues in L.A.'s annual review. At the same time, however, L.A. was well aware of her performance issues, and had been receiving informal coaching from Bahr beginning in September 2006. There is nothing that suggests a change, let alone a material change, to L.A.'s (or other employees') "hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment" based on this conduct. Minn.Stat. § 363A.08, subd. 2(3).[7] Capella's decision not to place L.A. on a PIP cannot reasonably be believed to constitute an adverse employment action against L.A. or the other employees that Bahr ambiguously references.[8]

Because we conclude that no reasonable person could believe that the practices

7. The court of appeals cited *Vaughn v. Edel*, 918 F.2d 517 (5th Cir.1990), for the proposition that an employer's decision to refrain from critiquing or counseling an employee is discriminatory. *Bahr*, 765 N.W.2d at 437–38. But in *Vaughn*, the employer provided no indication to the employee that her work was unsatisfactory and her employment was terminated. *Vaughn*, 918 F.2d at 519–20. Here, Bahr had been providing informal coaching to L.A. since September 2006 to help L.A. improve her job performance and Bahr regularly met with L.A. to review L.A.'s progress. L.A. was well aware of her performance issues and her employment at Capella remained unaffected.

8. We note that no federal court has held that placing an employee on a PIP, without anything more, constitutes an adverse employment action under Title VII. *See, e.g., Givens v. Cingular Wireless*, 396 F.3d 998, 998 (8th Cir.2005); *Pulley v. KPMG Consulting, Inc.*, 348 F.Supp.2d 388, 394–95 (D.Md.2004), *aff'd*, 183 Fed.Appx. 387 (4th Cir.2006). Accordingly, not placing an employee on a PIP, without anything more, cannot reasonably be believed to constitute an adverse employment action. *See Cullom v. Brown*, 209 F.3d 1035, 1041–42 (7th Cir.2000).

We also note that Justice Page adopts the position in his dissent that "[a]lthough Bahr had no basis to believe that Capella had engaged in employment discrimination against L.A., Bahr may have reasonably believed that Capella's race-based preferential treatment of L.A. constituted reverse discrimination against Capella's non-black employees who were subject to all of Capella's performance and disciplinary standards." Bahr's complaint ambiguously references "other employees," who, based solely on Capella's treatment of L.A., were allegedly treated unfairly and in a discriminatory manner because they were not treated in the same manner as L.A. But the complaint does not state whether any of these employees were minorities, nor does it provide any indication of how such employees were treated in an adverse manner. We fail to see how Capella's treatment of employees other than L.A. under Capella's normal employment practices could in any way be reasonably believed to constitute an adverse employment action against such employees for purposes of a reprisal claim under the MHRA.

Bahr opposed were prohibited under the MHRA, Bahr's complaint does not state a legally sufficient reprisal claim. Accordingly, we reverse.

Reversed.

Dissenting, PAGE, and ANDERSON, PAUL H., JJ.

Dissenting, MEYER, and ANDERSON, PAUL H., JJ.

PAGE, Justice (dissenting).

The Minnesota Human Rights Act (MHRA) prohibits an employer from discriminating against a person on the basis of race with respect to terms, conditions, or privileges of employment. Minn.Stat. § 363A.08, subd. 2(3) (2008). The MHRA also prohibits an employer from engaging in any reprisal against any person because that person opposed a practice forbidden under the MHRA. Minn.Stat. § 363A.15(1) (2008). The court holds that "Capella's decision not to place L.A. on a PIP cannot reasonably be believed to constitute an adverse employment action against L.A. or other employees." While I agree that not placing L.A. on a PIP cannot reasonably be believed to constitute an adverse employment action against L.A., I would hold that Bahr has alleged a viable reprisal claim based on her claim that she opposed Capella's discrimination against employees other than L.A.

Bahr complains that Capella asked her to depart from standard performance improvement methods with L.A., which was not done with any other employees. Specifically, Bahr was instructed to "move slowly" in the review process to "minimize the performance issues raised" in the review and to allow the legal department to review L.A.'s performance review before showing it to L.A. All of these actions benefited L.A. Generally, to prevail on an employment discrimination claim, the employer must have taken some adverse employment action against the employee.

*Goins v. West Group,* 635 N.W.2d 717, 722 (Minn.2001). Because Capella's actions with respect to L.A. benefited L.A., there was no basis for Bahr to believe that Capella had taken any adverse employment action against L.A. resulting in employment discrimination. Although Bahr had no basis to believe that Capella had engaged in employment discrimination against L.A., Bahr may have reasonably believed that Capella's race-based preferential treatment of L.A. constituted reverse discrimination against Capella's non-black employees who were subject to all of Capella's performance and disciplinary standards. Therefore, I would hold that Bahr stated a sufficient retaliation claim with respect to Cappella's alleged discrimination against employees other than L.A. and would remand the case to the district court for further proceedings.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Page.

MEYER, Justice (dissenting).

I respectfully dissent. I would conclude that Bahr's complaint satisfies the plain language of the Minnesota Human Rights Act (MHRA) because it alleges that Bahr opposed an employment practice forbidden under the MHRA. I would further conclude that Bahr's complaint is sufficiently pled because it alleges that Bahr objected to an employment practice that she reasonably and in good faith believed was forbidden under the MHRA. Because Bahr's complaint is sufficient to withstand a motion to dismiss on the pleadings, I would affirm.

In her complaint, Bahr alleged the following. Bahr managed L.A., an African–American woman who was transferred to Bahr's department after L.A.'s position in

another department was eliminated. Within a few months, Bahr noticed that L.A.'s performance was below standard. Bahr attempted to provide informal coaching efforts, but L.A. "demonstrated little to no improvement."

On several occasions Bahr conveyed concerns regarding L.A.'s below standard performance to Capella's Human Resources Department and to her supervisor. In January 2007, Bahr asked Nichole Scott, a Human Resources representative, for guidance in improving L.A.'s performance. On March 7, 2007, Bahr told her supervisor, Scott, and Seth Lockner (another Human Resources representative), that L.A.'s performance warranted placement on a Performance Improvement Plan (PIP). Lockner told Bahr to "move slowly with [L.A.]" and not to move forward with the PIP. Such resistance to a PIP was highly unusual.

On March 27, 2007, after other employees "expressed their frustrations" with L.A.'s work performance, Bahr again voiced her concerns to Human Resources. Scott told Bahr "to move more slowly . . . [with L.A.] than she had ever moved on a performance issue" because L.A. had a racially-based employment history with the university, and Capella wanted to avoid action that could result in the filing of a discrimination lawsuit by L.A. Scott also told Bahr that L.A.'s situation was "known and monitored by the highest levels in the organization, including [the president and CEO]." Scott further directed that Bahr delay L.A.'s annual performance review to permit the legal department to examine the review before it was given to L.A.

Bahr completed the performance review and did not give it to L.A. but rather gave the review to Scott. Because L.A.'s review fell below the minimum standards, Scott instructed Bahr to "minimize the performance issues raised," "do the right thing," and provide "balance" to L.A.'s review. Scott told Bahr to continue delaying L.A.'s review, so that the Human Resources Department could "take a fine tooth comb through it" and "vet it through legal." It is alleged that Human Resources did not examine the performance reviews of any other employee.

Bahr told her supervisor and Human Resources on several occasions that Capella's handling of L.A.'s situation was discriminatory to both L.A. and L.A.'s co-workers. When Bahr suggested on April 11, 2007, that L.A. be placed on a formal plan for improvement, she noted that Capella's treatment of L.A. was "unfair and discriminatory to [L.A.] and to other employees." Five days later, when Bahr was planning to meet with L.A. to discuss performance issues, Bahr stated to Human Resources and her supervisor that "the treatment of [L.A.] was discriminatory and unfair to [L.A.] AND to other people in the department." On April 19, 2007, Bahr told her supervisor that "she could no longer actively participate in the discriminatory treatment." On June 12, 2007, Bahr's supervisor asked her how L.A. was performing. Bahr responded that L.A. was not doing her job, that Bahr's hands were tied by Human Resources directives, and that she "was unwilling to engage in discriminatory treatment."

Bahr alleged that Capella retaliated against her by firing her because she opposed its discriminatory conduct. Bahr had previously been promoted. In April 2007, when Bahr met with her supervisor regarding the complaints relating to managing L.A., he praised Bahr's performance but stated that there was a "general belief" that Bahr was "intimidating." While Bahr's earlier request for a 360–review of her department had been denied, Capella ordered a 360–review after Bahr com-

plained about "unfair discriminatory treatment." Through the review, Bahr received high marks from her director and peers but lower marks from her staff, allegedly due to staff perception that Bahr was not properly addressing L.A.'s poor performance. On June 14, 2007, she met with a consultant to discuss how to improve her team's dynamic. Five days later, she told her supervisor and Human Resources representatives that she had taken steps to improve her team's work. Bahr's supervisor stated that he "did not think [Bahr] could turn the situation around to suit him and started to list various options for her termination." Bahr did not resign and she was then terminated and told to leave.

Bahr's complaint specifically alleges Capella engaged in unlawful employment practices that violated the MHRA and that Capella engaged in retaliatory conduct against Bahr due to her "good faith reports of discriminatory treatment and refusal[ ] to participate in discriminatory employment practices." To establish a retaliation claim, a plaintiff must establish the following elements: (1) statutorily protected conduct; (2) adverse action (against plaintiff); and (3) a causal connection between the two. *Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 548 (Minn.2001). The parties do not dispute whether the second and third elements were satisfied. The only disputed issue is whether Bahr engaged in "statutorily protected conduct."

Two possible standards govern whether a plaintiff has alleged statutorily protected conduct under the MHRA: the actual-violation standard or the good-faith, reasonable-belief standard.[1] *See* Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 416–17 (Supp.2000). To plead a viable complaint under the actual-violation standard, a plaintiff must allege that she suffered retaliation for opposing conduct that *actually* violates the MHRA. *See, e.g., EEOC v. C & D Sportswear Corp.*, 398 F.Supp. 300 (M.D.Ga. 1975); *Winsey v. Pace Coll.*, 394 F.Supp. 1324 (S.D.N.Y.1975). To plead a viable complaint under the good-faith, reasonable-belief standard, a plaintiff must allege that she reasonably and in good faith believed that the conduct she opposed was discriminatory. *See, e.g., Sisco v. J.S. Alberici Constr. Co., Inc.*, 655 F.2d 146, 150 (8th Cir.1981); *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978).

In construing the MHRA, our goal is to ascertain and effectuate the intention of the legislature. *See* Minn.Stat. § 645.16 (2008). When possible, we construe the MHRA to give effect to all its provisions. *See id.; see also City of W. St. Paul v. Krengel*, 768 N.W.2d 352, 356 (Minn.2009). If the words of the MHRA are unambiguous, we apply their plain meaning. *See* Minn.Stat. § 645.16. If the words are ambiguous, we examine factors beyond the MHRA's text to determine legislative intent. *See id.*

The MHRA reprisal provision states:

---

1. Federal courts and the Equal Employment Opportunity Commission (EEOC) developed both standards in relation to retaliation claims under Title VII, the federal analog to the MHRA. *See* Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 416–17, 428–29 (Supp.2000). Federal courts generally applied the actual-violation standard in the first decade after Title VII's enactment (1965–1975). *See, e.g., EEOC v. C & D Sportswear Corp.*, 398 F.Supp. 300 (M.D.Ga. 1975); *Winsey v. Pace Coll.*, 394 F.Supp. 1324 (S.D.N.Y.1975). During the same period, the EEOC held that the actual-violation standard was incorrect and took the position that an employee need only show a good-faith, reasonable belief that the practice opposed was discriminatory. Lindemann & Grossman, *supra*, at 428–29.

It is an unfair discriminatory practice for any individual who participated in the *alleged discrimination* as a[n] . . . employer . . . to intentionally engage in any reprisal against any person because that person:

(1) *[o]pposed a practice forbidden under this chapter. . . .*

A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment. It is a reprisal for an employer to do any of the following with respect to an individual because that individual has engaged in the activities listed in clause (1) or (2): refuse to hire the individual; depart from any customary employment practice; transfer or assign the individual to a lesser position in terms of wages, hours, job classification, job security, or other employment status; or inform another employer that the individual has engaged in the activities listed in clause (1) or (2).

Minn.Stat. § 363A.15 (2008) (emphasis added). The MHRA public policy provision states that it is, in part, the public policy of Minnesota to secure for *all* persons freedom from employment discrimination due to race. *See* Minn.Stat. § 363A.02, subd. 1(a)(1) (2008). It further provides that it is state policy to "protect all persons from *wholly unfounded* charges of discrimination." Minn.Stat. § 363A.02, subd. 1(b) (2008) (emphasis added).

Bahr alleges facts that are sufficient to establish an actual violation of Minn.Stat. § 363A.15, the reprisal provision. First, the conduct she alleges is discriminatory. The MHRA defines "discriminate" to include segregate or separate. Minn.Stat. § 363A.03, subd. 13 (2008). In other words, discriminatory conduct is conduct that segregates or separates on the basis of race. Capella separated L.A. from other employees by refusing to offer L.A.

assistance in improving her job performance that it offered to other employees. Bahr was not instructed to "move slowly" or depart from standard performance improvement methods with any other employee. Capella also separated L.A. in the performance review process because L.A. was the only employee whose performance review was evaluated by Human Resources and the legal department. Thus, under the definition of discrimination in the MHRA, Capella's conduct was discriminatory.

Furthermore, Capella retaliated against Bahr for her opposition to its handling of L.A.'s situation. Capella did not order review of Bahr or criticize her performance until after she expressed her objection to Capella's discriminatory treatment of L.A. and L.A.'s coworkers. According to Bahr's complaint, Capella abandoned procedures afforded other managers to improve their performance before termination when it terminated Bahr. Finally, Bahr's supervisor directly told Bahr that she was fired because she could not "turn the situation [regarding L.A.] around" to satisfy him. Drawing favorable inferences for Bahr and accepting the allegations in her complaint as true, Capella's conduct constitutes reprisal under the MHRA.

The plain language of section 363A.15 does not require individuals opposing discrimination to establish that discrimination actually occurred. The MHRA requires only an *allegation* of discrimination to protect a person from reprisal. The alleged discrimination must be based on opposition to a practice forbidden by the MHRA, but alleged discrimination is distinct from actual discrimination.

While a person opposing a practice believed to be discriminatory need not establish actual discrimination, the MHRA also reflects that the Act's reprisal provision does not protect frivolous or meritless alle-

gations of discrimination. "It is also the public policy of this state to protect all persons from wholly unfounded charges of discrimination." Section 363A.02, subd. 1(b). I suggest that a "wholly unfounded" claim means conduct that could not reasonably be believed to be discriminatory or that the person asserting the claim does not actually believe to be discriminatory. Because the MHRA does not protect frivolous allegations of discrimination, it follows that an allegation of discrimination must be reasonable and made in good faith. Frivolous ˏopposition to an employment practice is not protected under the Act from reprisal.

Courts interpreting Title VII's substantially similar retaliation provision have not required proof of actual discrimination. Title VII's retaliation provision is in substance similar to the MHRA reprisal provision:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (2006). Every federal circuit court that handles Title VII claims has adopted the good-faith, reason-able-belief standard.[2] We typically look to federal cases interpreting Title VII when construing the MHRA's legislative intent. *See, e.g., Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999) ("In construing the MHRA, we apply law developed in federal cases arising under Title VII of the 1964 Civil Rights Act.").

The good-faith, reasonable-belief standard comports with the public policy objectives codified in the MHRA. *See* Minn.Stat. § 363A.02 (2008). As noted, the MHRA is intended to free persons from employment discrimination. *Id.,* subd. 1(a)(1). Requiring a plaintiff to satisfy an actual-violation standard would likely chill reprisal claims and undermine the MHRA's effectiveness in combating discrimination. *See, e.g., Hearth v. Metro. Transit Comm'n,* 436 F.Supp. 685, 688 (D.Minn.1977) ("[T]his Court believes that appropriate informal opposition to perceived discrimination must not be chilled by the fear of retaliatory action in the event the alleged wrongdoing does not exist."); *see also Crumpacker,* 338 F.3d at 1172 (recognizing that requiring actual discrimination would discourage complaints of discrimination); *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir.1981) (describing the "chilling effect" on reporting alleged discrimination that would arise without permitting reasonable belief to support employee opposition to discrimination). The good-faith, reasonable-belief

---

**2.** *See, e.g., Tate v. Executive Mgmt. Servs., Inc.,* 546 F.3d 528, 532 (7th Cir.2008); *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 322 (3d Cir.2008); *EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 406–07 (4th Cir.2005); *Peterson v. Scott County,* 406 F.3d 515, 525 n. 3 (8th Cir.2005); *Crumpacker v. Kan., Dep't of Human Res.,* 338 F.3d 1163, 1172 (10th Cir.2003); *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir.1996); *Trent v. Valley Elec. Ass'n Inc.,* 41 F.3d 524, 526 (9th Cir.1994); *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994); *Petitti v.* *New England Tel. & Tel. Co.,* 909 F.2d 28, 33 (1st Cir.1990); *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1312–13 (6th Cir.1989); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988); *Parker v. Balt. & Ohio R.R. Co.,* 652 F.2d 1012, 1020 (D.C.Cir.1981). The U.S. Supreme Court has recognized the prevailing interpretation of Title VII, but the Court has not directly addressed the issue. *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam).

standard encourages employees to voice their concerns about discrimination while also protecting employers from frivolous claims of discrimination. *Sias,* 588 F.2d at 695 (adopting the good-faith, reasonable-belief standard in part to prevent "chill[ing]" employees from filing claims). The standard also encourages employees to call their employers' attention to discriminatory practices of which the employer might be unaware. *Berg v. La Crosse Cooler Co.,* 612 F.2d 1041, 1045 (7th Cir. 1980). In these ways, the good-faith, reasonable-belief standard facilitates the MHRA's public policy goal of eliminating employment discrimination. *See* Minn. Stat. § 363A.02, subd. 1(a)(1). Because it furthers the MHRA's stated public policy goals, I would adopt the good-faith, reasonable-belief standard to govern retaliation claims under the MHRA.

Bahr's complaint satisfies the good-faith, reasonable-belief standard. To allege discrimination in good faith, an employee must have an "honestly held" belief that the employer was engaged in discriminatory practices. *Monteiro v. Poole Silver Co.,* 615 F.2d 4, 8 (1st Cir.1980). In her complaint, Bahr alleges that she informed her supervisor and Capella's Human Resources Department on several occasions that she believed that Capella's actions were discriminatory to both L.A. and L.A.'s coworkers. Construing the allegations as true, Bahr's opposition to Capella's conduct was "honestly held" and therefore in good faith. *See Radke v. County of Freeborn,* 694 N.W.2d 788, 791 n. 1 (Minn. 2005).

To hold a reasonable belief, an employee must allege behavior that a reasonable person could have believed constituted un-

lawful discrimination. *Little v. United Techs. Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir.1997). Bahr alleged that Capella officials told her that they were handling L.A.'s situation differently because L.A. had a "racially based" history with the organization, and they wanted to avoid a discrimination lawsuit. Bahr further alleged that it was "highly unusual" to delay placement of an employee on a PIP and that L.A.'s performance review was handled differently from that of any other employee. A reasonable person may believe that treating one employee in this different manner due to her race is unlawful discrimination. Moreover, drawing favorable inferences for Bahr, we may assume that L.A.'s coworkers were not African–American. A reasonable person may also believe that treating L.A.'s coworkers differently because they are not African–American is also unlawful discrimination.[3] Accordingly, construing her allegations as true and drawing inferences in her favor, Bahr's complaint satisfies the good-faith, reasonable-belief standard. Bahr alleged an honestly held belief that discrimination occurred, and a reasonable person could believe that Capella's alleged conduct was unlawfully discriminatory.

Because Bahr's complaint satisfies both the good-faith, reasonable-belief standard and the actual-violation standard, I would affirm the court of appeals.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Meyer.

---

**3.** This is not to say that positive action programs aimed at reducing discrimination against protected classes are restricted under the MHRA. Minn.Stat. § 363A.02, subd. 1(b) ("Nothing in this chapter shall be interpreted

as restricting the implementation of positive action programs to combat discrimination."). Nothing in the record indicates that Capella's treatment of L.A. was part of a positive action program.