Ronald HYLAND and Gail Hyland, d/b/a
G & R Transportation, Appellants,

v.

STATE of Minnesota, et al., Respondents.

No. C9–93–1017.

Court of Appeals of Minnesota.

Dec. 14, 1993.

Review Denied Feb. 24, 1994.

Ronald J. Riach, Franke and Riach, P.A., Roseville, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, III, Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by KLAPHAKE, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

KLAPHAKE, Judge.

Appellants Ronald Hyland and Gail Hyland (the Hylands) challenge summary judgment dismissing their claims of defamation, tortious interference with business relations, and violation of the Uniform Deceptive Trade Practices Act against the Minnesota Department of Transportation and its employees (MnDOT), because the MnDOT employees were protected by absolute immunity and official immunity. We affirm.

## FACTS

The Hylands have owned and operated a passenger transportation business in St. Paul since 1988. Under the motor carrier statute, all carriers of passengers for hire must obtain permits. Minn.Stat. § 221.021 (1988). The Hylands petitioned for a permanent regular route permit and an administrative law judge (ALJ) conducted hearings. The ALJ denied them a regular route permit in May 1989 because they were "not fit and able to conduct the proposed regular route operations" within the meaning of the motor carrier statute. Minn.Stat. § 221.121, subd. 1 (1988). The ALJ concluded that Ronald Hyland "failed to demonstrate facts mitigating [his] willful and continuing disregard for the law applicable to motor carriers and * * * [failed to] show [he] would comply in the future."

No permit is required for limousine services that do not provide regular route service. Minn.Stat. § 221.025(n) (1988). Attempting to exempt themselves from the permit requirement, the Hylands purchased station wagons, registered them as limousines, and obtained limousine license plates in September of 1990. *See* Minn.Stat. § 168.128 (1990). The Hylands admit that these transportation services often involved transportation to the Minneapolis/St. Paul Airport from local hotels.

Other regular route carriers with permits complained to MnDOT that the Hylands furnished regular route services between the airport and hotels without a permit. From late 1990 to early 1991, MnDOT employees investigated these claims against the Hylands under Minn.Stat. §§ 221.036 and 221.-291 (1990), which provide for civil and criminal enforcement of motor carrier laws. MnDOT interviewed hotel personnel and permitted route carriers who competed with the Hylands. In response to questions from hotel personnel, MnDOT employees stated that the Hylands lacked the proper permits necessary to operate a regular route service.

The Hylands contend that their station wagon services fit within the limousine service transportation exemption. They argue that MnDOT employees' statements communicated during the investigation were false. In January 1992, the Hylands filed an amended complaint alleging slander, tortious interference with business relationships, and violation of the Uniform Deceptive Trade Practices Act. *See* Minn.Stat. § 325D.43–.48 (1990).

On February 17, 1993, MnDOT moved for summary judgment based on qualified official immunity and absolute immunity. The district court granted summary judgment in MnDOT's favor and dismissed the Hylands' claims, concluding that (1) MnDOT employees were investigating at the direction of the prosecuting authority and had absolute immunity and (2) MnDOT employees had official immunity because they did not act maliciously. The Hylands challenge these conclusions.

## ISSUES

1. Does the doctrine of absolute immunity bar tort claims against government agency employees that arise out of the employees' enforcement of state statutes and regulations?

2. Does the doctrine of official immunity bar tort claims against government agency employees investigating allegedly illegal conduct?

## ANALYSIS

On appeal from a grant of summary judgment, we must determine whether any

**564**

genuine issues of material fact exist and whether the district court erred in applying the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). We need not defer to a trial court's decision on legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

## I. *Absolute Immunity*

■ MnDOT is charged with enforcement and prosecution of the motor carrier safety laws:

> The department shall investigate the operation of carriers subject to the rules of the commissioner under this section * * * and may institute and prosecute actions and proceedings in the proper district court for enforcement of those rules.

Minn.Stat. § 221.031, subd. 5 (1990); *see also* Minn.Stat. § 221.036 (1990) (commissioner of transportation charged with prosecution of administrative actions relating to motor carriers). Given the statutorily-imposed obligation to investigate and prosecute civil and criminal enforcement proceedings, MnDOT asserts that it has absolute immunity from suit.

■ State and federal courts recognize that prosecutors are absolutely immune from suits for acts within the scope of their duties of initiating, charging and prosecuting criminal cases. *See Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *Brown v. Dayton–Hudson Corp.*, 314 N.W.2d 210, 214 (Minn.1981). The doctrine of prosecutorial or "quasi-judicial" immunity shields prosecutors from civil litigation arising out of acts "intimately associated with the judicial phase of criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995. This immunity protects prosecutors " 'from harassment by unfounded litigation' and ensures that prosecution remains 'vigorous and fearless.' " *Barry v. Johnson*, 350 N.W.2d 498, 499 (Minn.App.1984) (quoting *Imbler*, 424 U.S. at 423–27, 96 S.Ct. at 991–93), *pet. for rev. denied* (Sept. 12, 1984).

■ Minnesota courts extend this absolute immunity to investigative and administrative tasks performed at the direction of a county attorney. *See Barry*, 350 N.W.2d at 499. In *Barry*, an individual charged with theft sued a county attorney and an investigator for abuse of process and malicious prosecution after the theft charges were dismissed. *Id.* This court determined that the policy concerns supporting prosecutorial immunity required that immunity extend to an investigator when acting within the scope of his or her official duties:

> In performing his official tasks, the investigator is responsible for conducting investigations into circumstances of alleged crimes. He reports and recommends whether formal charges are justified. Because he acts at the direction of the prosecuting attorney, the investigator is also absolutely immune from civil suits when acting within the scope of his official duties.

*Id.* (citations omitted); *see also Erickson v. County of Clay*, 451 N.W.2d 666, 672 (Minn.App.1990) (absolute immunity from tort claims for investigator acting under prosecutor's direction but no immunity for county attorney who violated secrecy of grand jury proceeding).

Here, MnDOT employees investigated the Hylands' business pursuant to their statutory authority. *See* Minn.Stat. §§ 221.031, subd. 5, 221.036 (1990). Since MnDOT employees acted within the scope of their official prosecutorial duties, they are absolutely immune from suit.

## II. *Official Immunity*

■ The doctrine of official immunity protects from personal liability a public official charged by law with duties requiring judgment or discretion, unless the official is guilty of willful or malicious wrong. *Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991). The purpose of the official immunity doctrine is "to ensure that the threat of potential liability does not unduly inhibit the exercise of discretion required of public officials in discharging of their duties." *Id.* (quoting *Holmquist v. State*, 425 N.W.2d 230, 233 n. 1 (Minn.1988)). Official immunity, however, does not protect an employee who willfully violates a clearly established statutory or constitutional right of which a reasonable

person would have known. *Johnson v. Morris*, 453 N.W.2d 31, 39 (Minn.1990).

> Malice means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right. * * * In the official immunity context, willful and malicious are synonymous.

*Rico*, 472 N.W.2d at 107 (citations omitted). Official immunity bars suit unless the official commits a willful or malicious wrong that the official knows is prohibited by law:

> The defendant must have reason to know that the challenged conduct is prohibited. The exception does not impose liability merely because an official merely *intentionally* commits an act that a court or a jury subsequently determines is a wrong. Instead, the exception anticipates liability only when an official intentionally commits an act that he or she then has reason to believe is prohibited.

*Id.* (emphasis in original).

 To determine whether the doctrine of official immunity applies, we must examine the official's particular acts in question. *Morris*, 453 N.W.2d at 42. The determination of whether an official's actions were malicious or willful may be resolved by summary judgment. *See Elwood v. County of Rice*, 423 N.W.2d 671, 679 (Minn.1988).

 The motor carrier statute requires MnDOT to investigate complaints it receives. Minn.Stat. § 221.031, subd. 5 (1990). Because of this obligation, the mere fact that MnDOT investigated the Hylands cannot be a knowing violation of the law and the basis of liability.

 The Hylands, however, object to the manner in which MnDOT conducted its investigation. They contend the contacts between investigators and hotel personnel adversely affected their business. MnDOT argues that the documents the Hylands produced during discovery demonstrate that the Hylands provided regular route services between major hotels and the airport. This service is similar to those provided by licensed taxi cabs and other carriers with regular route authority between the airport and Twin Cities hotels. MnDOT employees investigated the Hylands' business with the suspicion that they were violating the motor carrier laws. As part of their duties, MnDOT investigators had to interview people who knew about the Hylands' operation. Therefore, the mere fact that MnDOT investigators spoke to witnesses cannot deprive the investigators of official immunity.

The evidence supports the trial court's findings that MnDOT employees did not act willfully or maliciously or knowingly violate the Hylands' rights. The trial court properly concluded that the MnDOT employees were protected by official immunity.

### DECISION

The district court correctly granted summary judgment in MnDOT's favor. Because MnDOT employees acted within the scope of their official duties under the motor carrier statute, they were absolutely immune from suit. Furthermore, the record shows that the MnDOT employees did not act willfully or maliciously, or knowingly violate the Hylands' rights. There are no genuine issues of material fact and the district court properly applied the law.

**Affirmed.**