*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1967**

Marcia Lee Stresemann,
d/b/a Affiliated Counseling Center, LLC,
Respondent,

vs.

Lucinda Jesson,
Commissioner of the Minnesota Department of Human Services,
in her individual and official capacity; et al.,
Appellants.

**Filed August 4, 2014
Reversed
Johnson, Judge**

Anoka County District Court
File No. 02-CV-13-1154

John M. Degnan, Scott M. Flaherty, Daniel M. White, Briggs and Morgan, P.A., Minneapolis, Minnesota (for respondent)

Lori Swanson, Attorney General, Scott H. Ikeda, Uzodima Franklin Aba-Onu, Assistant Attorneys General, St. Paul, Minnesota (for appellants)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**JOHNSON**, Judge

The Medicaid Fraud Control Unit of the Office of the Attorney General investigated allegations of fraudulent billing practices by a clinic that provides mental-health counseling services. The investigation included the execution of a warrant for the search of business records possessed by the clinic and a subsequent review of those records. In this civil lawsuit, the owner of the clinic claims that an employee of the Office of the Attorney General and two others violated her Fourth Amendment rights and committed common-law torts. The defendants moved to dismiss the amended complaint. The district court granted the motion in part and denied it in part. In this interlocutory appeal, the defendants seek reversal of the district court's partial denial of their motion to dismiss. We conclude that the district court erred by not granting the motion to dismiss in its entirety. Therefore, we reverse.

## FACTS

The Affiliated Counseling Center, LLC (ACC), provides mental-health counseling services. Marcia Lee Stresemann, a licensed professional clinical counselor, is the sole owner of ACC.

Medica Insurance Company contracts with the Minnesota Department of Human Services (DHS) to facilitate health-care services to Medicaid and Medicare recipients in Minnesota. Medica also contracts with health-care providers, such as ACC, which provide health-care services to Medicaid and Medicare recipients, and the health-care providers submit claims for reimbursement to Medica.

A person anonymously contacted Medica to report possible fraudulent billing by ACC. A Medica investigator contacted ACC, requested certain records, and conducted a preliminary investigation. In August 2011, the Medica investigator referred the matter to the Medicaid Fraud Control Unit (MFCU) of the Office of the Attorney General (OAG).

Catharine Morton-Peters is employed by the OAG as the chief investigator of the MFCU. After receiving the referral from Medica, Morton-Peters conducted a review of the information and documents provided by Medica. She reviewed reimbursement claims that ACC submitted to DHS between January 1, 2009, and October 10, 2012. She also interviewed a former ACC psychiatrist, a former ACC nurse practitioner, two former ACC employees who had responsibility for billing, and a clinical psychologist who knows Stresemann but had not been employed by ACC. Morton-Peters suspected that ACC had been significantly overpaid on Medicaid and Medicare claims and further suspected that ACC had fraudulently submitted claims in violation of state law. *See* Minn. Stat §§ 609.466, .52, .527 (2010).

In October 2012, Morton-Peters prepared an application for a warrant to conduct a search of ACC's premises for evidence relevant to the suspected violations of law. To establish probable cause, the 22-page warrant application described the investigative steps performed thus far and summarized the tentative conclusions of the investigation. The application requested a warrant for a search of documents possessed by ACC, including employee records, patient files, and billing and reimbursement records. The application also requested permission to remove patient files from ACC's premises,

3

which would allow OAG investigators to review records at an off-site location, retain relevant records, and return irrelevant records.

In October 2012, an Anoka County District Court judge approved the application and issued the search warrant in the form requested by Morton-Peters. The Fridley Police Department executed the search warrant and seized records from ACC's office. In January 2013, Stresemann sent a letter to three persons demanding the return of the seized records: Morton-Peters; Ron Nail, the manager of the Surveillance and Integrity Review Section of the Office of the Inspector General of DHS; and a person employed by the United States Department of Health and Human Services. The OAG promptly responded that it had returned, and would continue to return, records that were irrelevant to the investigation but that it would retain records that were relevant to the investigation and allow ACC to photocopy such records.

In February 2013, Stresemann commenced this action on behalf of ACC. Her amended complaint names three persons as defendants: Morton-Peters; Nail; and Lucinda Jesson, the commissioner of DHS. The amended complaint alleges five causes of action: (1) a violation of Minn. Stat. § 144.298, subd. 2 (2012), which protects the privacy of patient health-care records; (2) a claim arising under 42 U.S.C. § 1983 (2012) based on unspecified violations of her Fourth Amendment rights; (3) a violation of article I, section 10, of the Minnesota Constitution; (4) conversion; and (5) trespass to chattels.

In May 2013, the three defendants moved to dismiss the amended complaint for failure to state a claim on which relief can be granted. *See* Minn. R. Civ. P. 12.02(e). In September 2013, the district court granted the motion in part by dismissing counts 1 and

3 but denied the motion in part with respect to counts 2, 4, and 5. Morton-Peters, Nail, and Jesson appeal, seeking interlocutory review of the district court's partial denial of their motion to dismiss. *See McGovern v. City of Minneapolis*, 475 N.W.2d 71, 72 (Minn. 1991).[1]

## D E C I S I O N

### I. Count 2

Appellants argue that the district court erred by denying their motion to dismiss with respect to count 2 of the amended complaint, which alleges a claim or claims arising under section 1983 of title 42 of the United States Code, which authorizes a private cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *see also L.K. v. Gregg*, 425 N.W.2d 813, 817 (Minn. 1988).

We begin by attempting to identify with particularity the allegations against each of the three appellants. In the portion of her amended complaint that relates specifically to count 2, Stresemann alleges only that appellants "subjected or caused to be subjected [Stresemann] to the deprivation of [her] rights and privileges secured by the Fourth Amendment." The allegations against Morton-Peters are fairly easy to discern because

---

[1]Some of appellants' arguments for reversal are based on immunity principles, and some are based on principles of pleading and a plaintiff's obligation to state a *prima facie* case. Stresemann has not raised any issue as to whether all of appellants' arguments are appropriate for interlocutory review. If the question were raised, we likely would conclude that appellants' immunity arguments and non-immunity arguments are inextricably intertwined. *See Aon Corp. v. Haskins*, 817 N.W.2d 737, 741-42 (Minn. App. 2012); *see also Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51, 115 S. Ct. 1203, 1212 (1995).

the allegations in other portions of the amended complaint are focused primarily on her alleged conduct. The allegations against Nail and Jesson are not so easy to discern. At oral argument, Stresemann's appellate counsel clarified the factual bases of the section 1983 claims against each of the three appellants. Because Stresemann makes distinct allegations against each of the three appellants, we will separately analyze each appellant's respective appellate argument.

## A.    Section 1983 Claim Against Morton-Peters

Stresemann contends that Morton-Peters violated her constitutional rights when Morton-Peters applied for a warrant for the search of ACC records. The amended complaint appears to allege that Morton-Peters violated the Fourth Amendment on the ground that the scope of the search warrant was impermissibly broad. In the district court, however, Stresemann presented her claim somewhat differently by arguing that Morton-Peters violated the Fourth Amendment by submitting a warrant application that contained statements that were false or made with reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 2684-85 (1978). The district court denied appellants' motion with respect to count 2 for the following reasons:

> Plaintiffs' Amended Complaint alleges, "Defendants caused a deprivation of a constitutional or statutory right by unlawfully searching and seizing ACC's privileged medical records . . . ." Being required to accept that allegation as true, Plaintiffs have sufficiently alleged Defendants deprived ACC of its Fourth Amendment right while acting under color of law.
>
> Accepting Plaintiffs' allegation that Defendants deprived ACC of its Fourth Amendment right as true

6

precludes Defendants' claim of qualified immunity at this time.

This reasoning does not reflect a proper analysis of appellants' motion. A district court considering a motion to dismiss filed pursuant to rule 12 must assume that the historical facts alleged in the complaint are true. *See Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008). But a district court is not required to assume that the alleged historical facts state a claim for relief. "We are not bound by legal conclusions stated in a complaint when determining whether the complaint survives a motion to dismiss for failure to state a claim." *Id.* at 235; *see also Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010). The purpose of a rule 12 motion is to determine whether the facts pleaded state a viable claim. *See id.* To determine whether a claim survives a motion to dismiss, a district court must "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003).

Morton-Peters first contends that Stresemann did not actually plead the claim that she argued to the district court and continues to argue on appeal. In response, Stresemann points to a paragraph of the amended complaint in which she quoted a portion of Morton-Peters's warrant application with the following preface: "Incredibly, buried at [paragraph] 10 of the Application for Search Warrant and Supporting Affidavit the following was made: . . . ." Stresemann contends that the use of the word

"incredibly" implies that Morton-Peters's warrant application contained a knowingly false statement.

Stresemann's claim fails for four reasons. First, it is not in the form of a short, plain statement of fact. *See* Minn. R. Civ. P. 8.01; *Hardin Cnty. Sav. Bank v. Housing & Redevelopment Auth. of City of Brainerd*, 821 N.W.2d 184, 191 (Minn. 2012); *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 917-18 (Minn. 2012). The amended complaint uses the word "incredibly" in a rhetorical manner, as a way of characterizing the long quotation that follows. The amended complaint does not plainly state that Morton-Peters made a statement that was knowingly false or made with reckless disregard for the truth. The amended complaint does not reflect the specificity and particularity necessary for a section 1983 claim. *See Elwood v. County of Rice*, 423 N.W.2d 671, 676 (Minn. 1988) (affirming grant of summary judgment on section 1983 claim because plaintiff failed to establish Fourth Amendment violation).

Second, even if the amended complaint were construed in the manner urged by Stresemann, the amended complaint nonetheless would fail to allege that Morton-Peters made a statement that was knowingly false or made with reckless disregard for the truth. Stresemann claims that Morton-Peters's warrant application is false in two ways: (1) by stating that patient files "may be co-mingled" with other records, and (2) by stating that records would be promptly reviewed and irrelevant records promptly returned. The amended complaint fails to allege the first part of the claim because it does not allege that Morton-Peters had any information to suggest that patient files were *not* commingled with other records, and the amended complaint is silent with respect to whether patient

8

files actually were commingled with other records. The amended complaint fails to allege the second part of the claim because it concerns a future event and, thus, cannot be proved false at the time it was made. *See Belisle v. Southdale Realty Co.*, 283 Minn. 537, 539-40, 168 N.W.2d 361, 363 (1969) (rejecting fraud claim based on "represented act or event [that] did not take place" instead of "false representation of a past or existing material fact"); *see also Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.)*, 130 F.3d 309, 320 (8th Cir. 1997), *cert. denied*, 524 U.S. 927 (1998).

Third, the amended complaint fails to allege a section 1983 claim against Morton-Peters because the warrant application would establish probable cause even if the alleged false statement were omitted. To establish a *Franks* violation, a plaintiff must show that "(1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and (2) the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *United States v. Cowling*, 648 F.3d 690, 695 (8th Cir. 2011) (quotation omitted), *cert. denied*, 132 S. Ct. 1905 (2012). The alleged misstatements are not contained in the probable-cause portion of the warrant application but, rather, in the portion of the application that concerns the manner of execution of the warrant. Thus, the alleged false statements had no effect on the judge's determination of probable cause. *See id.*

Fourth, the amended complaint fails to allege a section 1983 claim against Morton-Peters because it does not allege that Morton-Peters's alleged misstatements are

9

contrary to clearly established precedent. The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Although the *Franks* doctrine is well established, Stresemann has not cited any caselaw arising from circumstances similar to this case so as to show that Morton-Peters's conduct violated her clearly established rights. *See Elwood*, 423 N.W.2d at 676; *Electric Fetus Co. v. City of Duluth*, 547 N.W.2d 448, 452 (Minn. App. 1996), *review denied* (Minn. Aug. 6, 1996).

Thus, Stresemann has not stated a claim for relief on her section 1983 claim against Morton-Peters.

**B.      Section 1983 Claim Against Nail**

Stresemann's amended complaint does not plainly state the actions or omissions of Nail that should cause him to be liable under section 1983. At oral argument, Stresemann's attorney clarified that her section 1983 claim against Nail is based on his involvement in Morton-Peters's investigation. But the amended complaint does not allege any such involvement. The amended complaint alleges only that Nail is an employee of DHS. The amended complaint does not allege that DHS was involved in Morton-Peters's investigation. The amended complaint obviously does not state facts that would support a conclusion that Nail violated Stresemann's Fourth Amendment rights. Thus, Stresemann has not stated a claim for relief on her section 1983 claim against Nail.

10

**C.      Section 1983 Claim Against Jesson**

Stresemann's amended complaint also does not plainly state the actions or omissions of Jesson that should cause her to be liable under section 1983.  At oral argument, Stresemann's attorney clarified that her section 1983 claim against Jesson is based on her failure to supervise Morton-Peters's investigation.  But the amended complaint does not contain any such allegation.  The amended complaint alleges only that Jesson is the commissioner of DHS.  The amended complaint does not allege that DHS was involved in Morton-Peters's investigation.  The amended complaint obviously does not state facts that would support a conclusion that Jesson violated Stresemann's Fourth Amendment rights.  Furthermore, the premise that Jesson had responsibility for supervising Morton-Peters is implausible; the amended complaint alleges that Morton-Peters is employed by the OAG, not DHS.  Thus, Stresemann has not stated a claim for relief on her section 1983 claim against Jesson.

For these reasons, the district court erred by denying appellants' motion to dismiss with respect to count 2 of the amended complaint.

## II.  Counts 4 and 5

Appellants also argue that the district court erred by denying their motion to dismiss with respect to counts 4 and 5 of the amended complaint, which allege state-law tort claims of conversion and trespass to chattels.  "'One who dispossesses another of a chattel is subject to liability in trespass for the damage done.  If the dispossession seriously interferes with the right of the other to control the chattel, the actor may also be

11

subject to liability for conversion.'" *Herrmann v. Fossum*, 270 N.W.2d 18, 20-21 (Minn. 1978) (quoting *Restatement (Second) of Torts* § 222 (1965)).

In the portion of her amended complaint that relates specifically to counts 4 and 5, Stresemann alleges that "ACC has a property interest in its patient charts," that "Defendant [sic] deprived ACC of that interest by unlawfully seizing those patient charts," and that "Defendants deprived ACC of that interest by losing or destroying those patient charts." We again will separately analyze the appellants' respective arguments.

## A.     State Tort Claims Against Morton-Peters

Morton-Peters argues that the district court erred by concluding that she is not entitled to prosecutorial immunity or official immunity. The district court rejected Morton-Peters's prosecutorial-immunity argument on the ground that "there is no evidence that any of the Defendants were involved in the filing and maintaining of any charges against Plaintiffs."

In *Barry v. Johnson*, 350 N.W.2d 498 (Minn. App. 1984), *review denied* (Minn. Sept. 12, 1984), this court affirmed a district court's grant of summary judgment to a county attorney's investigator on the basis of prosecutorial immunity. *Id.* at 499. We reasoned that prosecutorial immunity protects an investigator from liability if the investigator "acts at the direction of the prosecuting attorney" and "act[s] within the scope of his official duties." *Id.* Similarly, in *Hyland v. State*, 509 N.W.2d 561 (Minn. App. 1993), *review denied* (Minn. Feb. 24, 1994), this court affirmed a district court's grant of summary judgment on the basis of prosecutorial immunity to MnDOT employees who investigated statutory violations allegedly committed by a limousine

12

service.  *Id.* at 565.  We reasoned that the MnDOT employees were immune from suit because their actions were taken "pursuant to their statutory authority," which included both the investigation and prosecution of the motor-carrier safety laws.  *Id.* at 564.

In this case, the MFCU has statutory authority to investigate and prosecute violations relating to the Medicaid program.  *See* 42 U.S.C. § 1396b(q) (2012); Minn. Stat. § 256B.12 (2012).  In light of the allegations in the amended complaint and the arguments presented by the parties, there is no dispute that Morton-Peters is the chief investigator of the MFCU and that she investigated allegations of fraud by ACC pursuant to that statutory authority.  Accordingly, Morton-Peters is entitled to prosecutorial immunity.  *See Hyland*, 509 N.W.2d at 564.

The district court relied on this court's opinion in *Erickson v. County of Clay*, 451 N.W.2d 666 (Minn. App. 1990), in which we affirmed the district court's denial of a motion to dismiss claims against a county attorney's investigator because the investigator's "involvement in the grand jury proceedings did not involve initiation and maintenance of prosecution."  *Id.* at 671.  The *Erickson* opinion did not be hold that a person who is not an attorney never is entitled to prosecutorial immunity; such a holding would be inconsistent with this court's prior opinion in *Barry*.  The particular facts concerning the investigator's actions in *Erickson* are not apparent from the opinion, which makes it difficult for Stresemann or this court to distinguish it from *Barry*.  *See Erickson*, 451 N.W.2d at 671.  In any event, *Hyland* provides a clear basis for applying prosecutorial immunity in this case based on statutory authority to investigate and prosecute a particular type of violation of law.  *See Hyland*, 509 N.W.2d at 564.

13

Thus, Morton-Peters is entitled to prosecutorial immunity. In light of that conclusion, we need not analyze Morton-Peters's argument that she is entitled to official immunity.

**B.      State Tort Claims Against Nail and Jesson**

The amended complaint makes no express allegation that Nail or Jesson ever possessed the ACC records that were seized. Accordingly, the amended complaint does not allege facts that Nail or Jesson either seized ACC's patient charts or lost or destroyed them. Thus, Stresemann has not stated a claim for relief on her state-law tort claims against Nail and Jesson.

For these reasons, the district court also erred by denying appellants' motion to dismiss with respect to counts 4 and 5 of the amended complaint.

**Reversed.**